UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------------------x
AMIE ZIMMERMAN,

        Plaintiff,

-against-

HAVIDAN RODRIGUEZ, TODD FOREMAN, and PAUL BURLINGAME,

        Defendants.
--------------------------------------------------------------------------------x

Civ. No.: 1:23-cv-44 (FJS/DJS)

**COMPLAINT**

Trial by Jury Demanded

Plaintiff AMIE ZIMMERMAN, by and through the undersigned counsel and for her Complaint against Defendants HAVIDAN RODRIGUEZ, TODD FOREMAN, and PAUL BURLINGAME, (collectively, the "Defendants"), alleges as follows:

## NATURE OF THE ACTION

1. Plaintiff brings this action seeking relief against Defendants for their violations of 42 U.S.C. § 1983, 29 U.S.C. § 215, and New York common law.

2. The claims at issue in this matter involve Defendants' deprivation of Plaintiff's First Amendment rights and their retaliation against Plaintiff, first through the use of violent force, and then by instituting discipline against Plaintiff.

3. Specifically, after the Plaintiff publicly protested UAlbany's unlawful wage theft policies, Defendants Todd Foreman and Paul Burlingame, at the direction of UAlbany President Defendant Havidan Rodriguez, physically attacked the Plaintiff in order to suppress her speech.

4. Making matters worse, after counsel for the Plaintiff sent a demand letter to Defendant Rodriguez delineating her claims for retaliation pursuant to the Fair Labor Standards Act and tortious battery under New York common law, Defendants launched retaliatory disciplinary procedures against Ms. Zimmerman.

1

5. Plaintiff seeks to remedy the harm that she suffered and continues to suffer as a direct and proximate consequence of the Defendants' unlawful actions.

6. Plaintiff seeks declaratory relief, monetary damages, and punitive damages for Defendants' violations of 42 U.S.C. § 1983, 29 U.S.C. § 215, and New York common law, as well as all other remedies available to her.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. §§ 1331, 1343, and other relevant federal statutes.

8. This Court has supplemental jurisdiction over Plaintiff's state common law claim pursuant to 28 U.S.C. § 1367 because those claims are so related to the federal claims that they form a part of the same case or controversy between Plaintiff and Defendants.

9. Venue is proper pursuant to 28 U.S.C. § 1391 because Defendants operate within Albany County in the city of Albany. Furthermore, the acts and/or omissions giving rise to Plaintiff's claims occurred in Albany County.

## PARTIES

10. PLAINTIFF AMIE ZIMMERMAN ("Plaintiff" or "Ms. Zimmerman") is an adult woman who, at all times relevant to this Complaint, has resided in Rensselaer County.

11. Since August 2021, Plaintiff has been employed by Defendants.

12. Since August 2021, Plaintiff has been a student a UAlbany.

13. HAVIDAN RODRIGUEZ is the President of the State University of New York at Albany ("UAlbany").

14. At all times relevant, Defendant Rodriguez has had the authority to direct, control, manage, and enlist other UAlbany staff, including, *inter alia*, Defendant Foreman and Defendant Burlingame.

15. At all times relevant, Defendant Rodriguez has had the authority to set UAlbany policies and practices.

16. Since September 2021, and jointly with the other Defendants, Defendant Rodriguez has been Plaintiff's employer.

17. Specifically, Defendant Rodriguez has the power to hire, supervise, manage and direct the Plaintiff's work, has the power to discipline Plaintiff, whether directly or indirectly, and has the power to terminate Plaintiff from her employment at UAlbany.

18. Moreover, Defendant Rodriguez has the power to discipline, punish and expel the Plaintiff in her capacity as a student at UAlbany.

19. At all times relevant, Defendant Rodriguez has had the power to act on behalf of UAlbany.

20. TODD FOREMAN is the Vice President for Finance and Administration of UAlbany.

21. At all times relevant, Defendant Foreman has had the authority to direct, control, manage, and enlist other UAlbany staff, including, *inter alia*, the Plaintiff.

22. Since September 2021, and jointly with the other Defendants, Defendant Foreman has had supervisory authority over Plaintiff.

23. Specifically, Defendant Foreman has the power to hire, supervise, manage and direct the Plaintiff's work, has the power to discipline Plaintiff, whether directly or indirectly, and has the power to terminate Plaintiff from her employment at UAlbany.

24. Moreover, Defendant Foreman has the power to discipline, punish and expel the Plaintiff in her capacity as a student at UAlbany.

25. At all times relevant, Defendant Foreman has had the power to act on behalf of UAlbany.

26. PAUL BURLINGAME is the Chief of University Police at UAlbany.

27. At all times relevant, Defendant Burlingame has had the authority to direct, control, manage, and discipline UAlbany staff and students, including, *inter alia*, the Plaintiff.

28. Defendant Burlingame has the power to discipline, punish and expel the Plaintiff in her capacity as both an employee and student at UAlbany.

29. At all times relevant, Defendant Burlingame has had the power to act on behalf of UAlbany.

## PROCEDURAL REQUIREMENTS AND PROCEDURAL HISTORY

30. On October 25, 2022, through counsel, Plaintiff sent the Defendants a demand letter placing them on notice of her Fair Labor Standards Act and New York common law claims.

31. On December 19, 2022, a Notice of Claim was served upon UAlbany.

## FACTUAL ALLEGATIONS

32. Ms. Zimmerman has been a Ph.D. student and graduate assistant at UAlbany since September 2021.

33. Throughout her tenure at UAlbany, Ms. Zimmerman has received nothing but outstanding grades as a student and stellar performance reviews as an employee.

34. Ms. Zimmerman has been a member of UAlbany's Graduate Student Employees Union ("GSEU") throughout her time at UAlbany.

35. In January 2022, Ms. Zimmerman became an organizer for GSEU.

**Ms. Zimmerman Openly Protests Unlawful Wage Practices at UAlbany that Affect all of her Colleagues**

36. On Saturday, October 15, 2022, Ms. Zimmerman met several members of GSEU, including Shirley Jin, Sof Voet, Marina Hernandez, Brandon Gehres, Qi Sun, Kayla Adgate, and Julian Mostachetti, as well as former GSEU organizer Rachel Rampil, UAlbany professor David Banks, Albany County Central Federation of Labor President Ibrahím Pedriñán, and other community members and UAlbany graduate alumni members for an action at the Homecoming Pregame event outside the football stadium.

37. This GSEU action was part of an ongoing campaign to end wage theft, and specifically to abolish broad-based fees for graduate workers.

38. GSEU planned to raise awareness of this legal violation by speaking with alumni in attendance, asking them to sign the newly launched fee petition, and appealing directly to Defendant Rodríguez, to demand that he end wage theft at UAlbany.

39. Ms. Zimmerman and the GSEU members and their supporters therefore gathered at 1:00 p.m. and walked together to the Pregame sectioned area which had North-East and South-West entrances.

40. The Pregame sectioned area was in an open grassy area next to the stadium entrance, with a wide paved walkway running through the middle.

41. The Pregame consisted of a registration tent for alumni to receive swag; a bouncy house; a DJ booth; and several tents for food and beverages, including alcoholic beverages.

42. The food and drink tents were situated on either side of the central walkway.

43. Along with alumni and family activities, there were many people tailgating in the parking lot off the South-West entrance.

44. Ms. Zimmerman and the GSEU members and their supporters entered at the North-East gate and briefly discussed staying there, as it was closest to the campus center and where many of them had parked their cars, but instead decided to go down the corridor of tents to the South-West entrance where the alumni were registering for food and beverage service and receiving their UAlbany swag, nearest the tailgating lot.

45. Beginning at approximately 1:30 p.m., Ms. Zimmerman and the group remained there chanting "End Wage Theft"; holding banners and signs that demanded UAlbany to stop wage theft; and handing out anti-wage theft flyers.

46. Ms. Zimmerman had a megaphone, knowing that the group would be outside and competing with a lot of ambient noise.

47. At approximately 2:00 p.m., Ms. Zimmerman and the group caught sight of Defendant Rodríguez, so they chanted directly to him, "Hey you! Hey Havidán! End wage theft!"

48. They repeated this chant for several minutes.

49. As a direct and retaliatory consequence of Plaintiff's open speech activity and opposition to wage theft at UAlbany, and at the direction of Defendant Rodriguez, at approximately 2:15 p.m., the head of campus police Defendant Burlingame approached the group and spoke directly to Ms. Zimmerman.

50. Defendant Burlingame advised the Plaintiff that she was violating campus code by using a personal amplification system at the event and that she needed to stop using it because she was being disruptive to the event.

51. Ms. Zimmerman asked Defendant Burlingame about all the other noise going on, including the DJ at the booth just a few yards away, and Defendant Burlingame responded to the Plaintiff by saying that she was not allowed to use a megaphone for "personal reasons."

6

52.     Although Defendant Burlingame's rationale for requesting that the Plaintiff cease the use of the megaphone was unclear, Ms. Zimmerman complied and promptly put the megaphone away.

**Defendant Foreman and Defendant Burlingame Silence Ms. Zimmerman's Speech Through Physical Attack**

53.     At approximately 2:45 p.m., Ms. Zimmerman and the group decided to wrap up for the day, but first they planned to do one last pass down the corridor of tents on their way out of the event.

54.     Ms. Zimmerman stood at the front and led the group chants on the megaphone.

55.     The group was about 2/3 of the way up the walkway from the South-West gate to the North-East gate when Defendant Burlingame and Defendant Foreman, the Vice President of Finance and Administration of UAlbany, came out from a tent where they were seen conversing with Defendant Rodriguez.

56.     Upon exiting the tent, Defendant Burlingame and Defendant Foreman physically blocked Ms. Zimmerman, pinning her between them so that she could not move.

57.     What happened next is nothing short of shocking.

58.     On Ms. Zimmerman's left, Defendant Burlingame shouted into Plaintiff's ear that she was to immediately stop chanting, while at her right, Defendant Foreman physically gripped onto her upper arm at the shoulder and squeezed very hard, while shouting into her ear that she was not allowed to use a megaphone.

59.     Ms. Zimmerman attempted to break free and continue marching, while continuing to chant and using her free arm to gesture that the group was to continue marching towards the exit and that they were leaving.

60. Defendant Foreman, however, refused to release Ms. Zimmerman from his tight grasp and instead held onto her, preventing her from moving.

61. A struggle ensued as Ms. Zimmerman attempted to break free.

62. Eventually, and likely because Defendant Foreman suddenly came to his senses and realized that he was publicly physically restraining a woman against her will, Defendant Foreman released her.

63. Several people witnessed the Defendants' forceful restraint and battery of Ms. Zimmerman, which left deep indentations in her upper arm and shoulder.

64. Upon information and belief, including information provided by Plaintiff and other witnesses who were present at the scene, Defendant Foreman had likely been drinking alcohol in the moments leading up to his nonconsensual restraint and battery of Ms. Zimmerman.

65. Once Plaintiff was able to break free, she and the group left via the North-East gate, and a few group members overheard Defendant Foreman ask Defendant Burlingame "Who is she?" and Defendant Burlingame's response: "I don't know, but I'll find out."

66. Immediately thereafter, Defendant Burlingame followed Plaintiff out of the event and, before the group reached the parking area, asked for her name.

67. Ms. Zimmerman told Defendant Burlingame her full name, and asked why he needed to know her name.

68. Defendant Burlingame advised Plaintiff that because she had utilized a megaphone at the event, a violation of UAlbany's Code of Conduct would be filed against her.

**Ms. Zimmerman Engages in Protected Activity by Sending a Demand Letter to Defendant Rodriguez and Defendant Foreman**

69.    On October 25, 2022, the Plaintiff's attorneys send a demand letter to Defendant Rodriguez and UAlbany, with Defendant Foreman in copy, describing, *inter alia*, Ms. Zimmerman's claims against the Defendants for FLSA retaliation and New York battery.

**Defendants Discipline Ms. Zimmerman in Retaliation for Engaging in Protected Activity**

70.    On December 7, 2022 at 10:52 a.m., Defendant Burlingame filed a disciplinary incident report against Ms. Zimmerman containing the following description:

> While on scene at the Homecoming Game Day event outside of Casey Stadium on Saturday, October 15th at 2:30pm, I observed PI-1 (Zimmerman) participating in a demonstration on the edge of the walkway. The site of the demonstration was just west of the stadium, and located within the Game Day event boundaries, and the event was attended by several hundred people at the time. The demonstration appeared to be associated with the Graduate Student Employee's Union (GSEU), and I recognized individuals from previous demonstrations. While the demonstration consisted of a few indiviudals holding up picket signs that did not cause any impactful disruption to the Game Day event, PI-1 was speaking through an electronic megaphone that was in conflict with the music and programming of the Game Day event. I approached PI-1 and informed her that while I respected her freedom of expression, the use of the megaphone was a violation of Univeristy Policy and she was directed to cease using the megaphone. PI-1 inquired as to which policy it was a violation of, and I informed her that it was a violation of our Time, Manner, and Place restrictions in our Freedom of Speech policy, as well as the Prohibited Items policy. She acknowledged my direction, and in addition to speaking with PI-1 previously as a University official at previous demonstrations I was wearing a shirt that clearly identied my as the Chief of University Police and a Game Day identification lanyard that contained my name and title. Given our conversation and context, it was clear to me that PI-1 recognized me as a University official and understood my direction.Approximately 15 minutes later, I observed the group proceed to walk through the center of the Game Day event area with PI-1 chanting through the electronic megaphone. This again caused a disruption to the event, although momentary. I followed the group to a ponit north of the event where I identified the individual as PI-1, and informed her that she would be referred to Student Conduct for her actions.

71.    At the end of the report, Mr. Burlingame stated that Ms. Zimmerman's conduct amounted to violations of various provisions of the Community Rights & Responsibilities, including section 24 (Disruptive Conduct) and section 20 (Non-Compliance).

72. On December 7, 2022 at 10:54 a.m.—two (2) minutes after Defendant Burlingame filed the incident report against Ms. Zimmerman—Ms. Zimmerman received an email from Craig Brewer of the Dean of Students Office at UAlbany, advising her that she was required to attend a "mandatory" disciplinary meeting on December 13, 2022 "regarding an incident you were involved in and your alleged violations of the University's student code of conduct, the *Community Rights & Responsibilities*."

73. That the Office of the Dean of Students had already drafted the email to Ms. Zimmerman, describing the facts from Mr. Burlingame's incident report and the need for a disciplinary conference *before* that incident report was even filed demonstrates retaliatory animus.

74. On January 4, 2023, Ms. Zimmerman was required to participate in a disciplinary conference with Mr. Brewer regarding Defendant Burlingame's October 15, 2022 report.

75. During this disciplinary conference, Ms. Zimmerman was advised that she would receive a warning from UAlbany for her purported "non-compliance" and "disruptive conduct" on October 15, 2022.

76. Ms. Zimmerman was advised that the warning would remain in her file through the spring 2023 semester, and that if she were to be issued another similar warning during this probationary period, the discipline would be more severe.

77. That is, Defendants disciplined and threatened even more severe discipline against Ms. Zimmerman if she were to continue engaging in protected activity.

78. Defendants' concerted efforts to discipline Ms. Zimmerman were in direct retaliation for Ms. Zimmerman's October 15, 2022 protected speech activity and her October 25, 2022 demand letter protesting Defendant Rodriguez's, Defendant Foreman's, and Defendant Burlingame's retaliation for opposing violations of the FLSA.

79. Defendants' concerted efforts in the aftermath of the October 15, 2022 incident demonstrate they condoned and ratified Defendant Burlingame's unlawful retaliation.

80. But for Ms. Zimmerman's participation in protected speech activity, her actions would not have subjected her to discipline.

## COUNT I

## VIOLATIONS OF 42 U.S.C. § 1983

81. Plaintiff hereby repeats and realleges each and every allegation in the preceding paragraphs as if set forth fully herein.

82. By the actions described above, among others, the Defendants violated Section 1983 when they, under color of New York State law, deprived the Plaintiff of her constitutional rights.

83. As a direct and proximate result of the Defendants' unlawful conduct, Plaintiff has suffered severe mental anguish and emotional distress for which she is entitled to an award of compensatory damages and punitive damages, along with such other relief that the Court deems just and proper.

## COUNT II

## UNLAWFUL RETALIATION UNDER THE FAIR LABOR STANDARDS ACT

84. Plaintiff hereby repeats and realleges each and every allegation in the preceding paragraphs as if set forth fully herein.

85. By the actions described above, among others, the Defendants violated the Fair Labor Standards Act when they retaliated against the Plaintiff for first opposing wage theft and then complaining about FLSA retaliation.

11

86. As a direct and proximate result of the Defendants' unlawful conduct, Plaintiff has suffered severe mental anguish and emotional distress for which she is entitled to an award of compensatory damages and punitive damages, along with such other relief that the Court deems just and proper.

## COUNT III

## NEW YORK BATTERY

87. Plaintiff hereby repeats and realleges each and every allegation in the preceding paragraphs as if set forth fully herein.

88. By the actions described above, among others, the Defendants harmed the Plaintiff by way of physical battery.

89. As a direct and proximate result of the Defendants' unlawful conduct, Plaintiff has suffered severe mental anguish and emotional distress for which she is entitled to an award of compensatory damages and punitive damages, along with such other relief that the Court deems just and proper.

## RELIEF SOUGHT

**WHEREFORE**, Plaintiff requests relief as follows:

A. An order declaring that the actions of Defendants alleged in this Complaint amount to unlawful violations of the U.S. Constitution, Federal Law, and New York common law;

B. An order enjoining any further acts of retaliation against the Plaintiff and current and former employees and students of Defendants;

C. An order mandating implementation and enforcement of an anti-violence policy at UAlbany;

D. An award of compensatory damages in an amount that would fully compensate Plaintiff, plus prejudgment interest, for the economic loss, mental anguish, emotional pain and suffering, in an amount to be determined at trial;

E. An award of punitive damages to Plaintiff in an amount that would punish Defendants for the excessive, extreme, willful, wanton, reckless, and negligent misconduct alleged in this Complaint that would effectively deter Defendants from future wrongdoing and other unlawful behavior, in an amount to be determined at trial;

F. An award of all penalties available under the applicable laws;

G. An award of reasonable attorneys' fees, the fees and costs of experts, the costs of this action, and interest; and

H. Such other relief as this Court deems just and equitable.

## JURY TRIAL

Plaintiff demands a jury trial on all issues of facts and damages.

Dated: January 11, 2023

Respectfully submitted,

Maria L. Chickedantz

EISNER DICTOR & LAMADRID, P.C.
39 Broadway, Suite 1540
New York , NY 10006
Tel. (212) 473-8700
Fax. (212) 473-8705
maria@eisnerdictor.com

*Attorneys for Plaintiff*